UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ARCHIE LEMONT BUTLER, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-00590-AGF |
| | ) |
| CORIZON HEALTH, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Jeffrey Carson's ("Carson") Motion for Summary Judgment (ECF No. 44). The matter is fully briefed and ready for disposition. For the reasons set forth below, Carson's motion will be granted.

## BACKGROUND

Plaintiff Lemont Butler ("Butler") brings this action pro se under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment constitutional rights, made applicable to him by the Fourteenth Amendment, during his incarceration as a pre-trial detainee at the St. Louis City Justice Center ("SLCJC"). *See Estelle v. Gamble*, 429 U.S. 97, 101 (1976). Butler's complaint, as amended, names as Defendants Corizon Health, Inc. ("Corizon"), the healthcare services provider for SLCJC, and Carson, Superintendent of SLCJC. Corizon has since been dismissed, leaving Carson, who is sued in his individual capacity only, as the remaining Defendant.

Liberally construing Butler's amended complaint, Butler alleges that Carson was deliberately indifferent to his painful dental condition, for which Butler allegedly did not receive adequate treatment for nine months. The basis of his claims against Carson stem primarily from Carson's role as the superintendent of SLCJC.[1] Carson now moves for summary judgment, arguing that he is entitled to qualified immunity, that Butler cannot establish that Carson was personally involved in or responsible for the alleged denial of adequate dental care, and that Butler cannot establish that Carson knew of and disregarded an excessive risk to Butler's health due to inadequate dental staffing and equipment during the relevant period of time.

The record establishes the following. Corizon provides healthcare services for inmates at SLCJC pursuant to a contract between the City of St. Louis and Corizon, and Corizon hires healthcare professionals to provide those services. In October 2015, the dentist who had been permanently assigned to SLCJC ended his employment with Corizon. Between October 2015 and March 2016, Corizon retained a dentist on a temporary basis to provide dental services to SLCJC inmates. The temporary dentist ensured that inmates received their yearly dental evaluations, while Dr. Fe Fuentes, the physician assigned to SLCJC, was charged with identifying circumstances that required an immediate referral to an outside dentist for further treatment. Corizon hired Carla Daugherty, DDM, as the permanent SLCJC dentist in March 2016. Carson Aff., ECF No. 45-2; Fuentes Decl., ECF No. 48-4.

---

[1] During his deposition, Butler confirmed the nature of his claims.

The following facts regarding Butler's treatment are undisputed, except where otherwise specified. Butler was incarcerated at SLCJC from October 10, 2015, until August 23, 2016. Upon his arrival at SLCJC, Butler underwent an initial medical examination, at which time he did not report any dental issues or pain. Carson's Undisputed Material Facts ("Carson UMF"), ECF No. 45, at ¶¶ 1-5.

On November 11, 2015, Butler filed a health services request seeking dental treatment for the first time because a tooth had broken off. He claimed the tooth caused him pain "every so often," and he requested that his teeth be cleaned. On November 23, 2015, Butler was seen by a nurse, and Butler reported that his pain was 10 out of 10 and that the pain interfered with his chewing. The nurse did not note any signs or symptoms of infection, and she started Butler on over-the-counter analgesics to address the pain. She advised Butler to contact medical if the symptoms worsened and referred Butler to dental for future evaluation. Corizon's Statement of Uncontroverted Material Facts ("Corizon UMF"), ECF No. 55.

On December 14, 2015, Butler submitted a health services request reporting that his teeth bled when he brushed them and that he had pain and swelling in the broken tooth. Butler was seen by a nurse on December 18, 2015, and he reported that nothing improved the pain. The nurse did not note any signs or symptoms of infection or swelling. She prescribed 400 mg of ibuprofen twice a day, but did not refer Butler to dental or a physician. *Id.*

On January 30, 2016, Butler filed a health services request complaining of tooth pain and bleeding gums, indicating that this was his third request to be seen by a dentist.

3

On February 3, 2016, a nurse evaluated Butler, and she referred him to a dentist. On February 11, 2016, Butler reported significant tooth pain and bleeding gums and requested to be seen by a dentist and prescribed medication. Butler was seen by a nurse on February 17, 2016, who evaluated him and contacted Dr. Fuentes. Dr. Fuentes prescribed Butler antiseptic mouthwash and 400 mg of ibuprofen for seven days. *Id.*

On February 25, 2016, Butler requested a follow-up with a dentist. After an appointment with a nurse, Butler was seen by Dr. Fuentes on February 29, 2016. Dr. Fuentes noted cavities in Butler's right upper and left lower molars, but observed no symptoms of infection. Dr. Fuentes restarted Butler on antiseptic mouthwash and prescribed 250 mg of naproxen, three at a time, for 30 days, and referred Butler to a dentist. *Id.*

On March 28, 2016, Butler filed a health services request reporting that the medication was not helping and that he was not able to sleep. He was triaged and referred to nurse sick call. On March 29, 2016, Butler filed a grievance concerning his dental care. On March 30, 2017, Butler allegedly refused antiseptic mouthwash, which Butler disputes. *Id.*

On March 31, 2016, Butler submitted another health services request asking to be seen by a dentist, claiming that he had been cut off of his pain medication, and requesting a refill of his prescription. He was seen by a nurse the same day, and Butler reported for the first time that he had developed a second tooth ache. The nurse referred his prescription refill request to the physician. *Id.*

During an April 4, 2016 visit, Dr. Fuentes observed that Butler had cavities in his upper right molar and left lower molar. She again prescribed Butler naproxen, this time 500 mg for 30 days. On April 12, 2016, Butler was seen by Dr. Daugherty for a dental evaluation. Butler reported that his tooth had been "messed up" since December and that he had experienced dental issues "for years." Dr. Daugherty diagnosed bleeding gingiva and cavities in three teeth. She determined that the teeth were "unrestorable" and needed to be extracted, and she prescribed Butler antiseptic mouthwash and antibiotics. *Id.*

On May 5, 2016, at Butler's request, Dr. Fuentes refilled his Naproxen prescription for seven days. On May 15, 2016, Plaintiff requested dental work and another refill of his prescription. On May 17, 2016, a nurse saw Butler and evaluated him for a medication renewal. *Id.*

On May 21, Butler requested a follow up to obtain a new prescription for his tooth pain. Dr. Fuentes again prescribed naproxen 500 mg tablets for a period of 30 days, starting on May 24, 2015. On June 1, 2016, Dr. Daugherty advised Butler that he would be referred out for the extraction of his teeth, and she completed the consultation request that day. On June 19, 2016, Butler requested renewal of his antiseptic mouthwash, which Dr. Daugherty refilled on June 22, 2016. *Id.*

In July 2016, Butler made several requests to have his teeth pulled, reported slight swelling in his mouth, and sought renewal of his pain medication. On July 29, 2016, Dr. Daugherty noted that Butler had been referred to an oral surgeon, which had been approved. She planned to provide analgesic medication until that appointment and started Butler on Naproxen 500 mg tablets, three times a day. Dr. Fuentes also saw

5

Butler that day because he was requesting pain medication for his toothache. She renewed Butler's antiseptic mouthwash prescription, and, on August 11, 2016, Dr. Daugherty renewed his naproxen prescription, 500 mg, twice a day. On August 15, 2016, an oral surgeon extracted three of Butler's teeth, and the procedure resolved Butler's dental pain. Butler Dep., 34:4-7.

Darren Flowers, DMD, reviewed Butler's SLCJC dental records, and attested to the following opinions:

1. The course of treatment provided by the medical and dental staff between the initial health services request of November 11, 2015, and final treatment on August 15, 2016, appropriately controlled Butler's discomfort.

2. Butler did not suffer any harm from November 11, 2015, the date he initially reported tooth pain, and August 15, 2016, when the three teeth were extracted.

3. The standard of care that is generally accepted in the profession of dentistry in Butler's situation is to see and treat the patient as soon as possible and not present or cause harm to that patient. Cavities can be managed for an extended period of time without extraction through analgesic medication and antiseptic mouth wash with minimal risk. In this case, the medical staff saw Butler promptly for his complaints of pain, rendered appropriate care to stabilize his condition, and prevent any harm to Butler until his teeth could be extracted. Considering Butler did not have signs or symptoms of infection and the providers managed his pain while on analgesic medication, the decision to pursue stabilizing care until his teeth were extracted were not unreasonable.

Flowers Decl., ECF No. 55-1. With regard to Butler's claims of pain, Dr. Flowers opined that there exists no documentation of weight loss or increased blood pressure, pulse, or respiration rate, which would indicate increased or uncontrolled pain. He also noted that only one time, on March 28, 2016, did Butler report that the medication prescribed was not working. Otherwise, Butler requested prescription refills, never complained that the

6

medication was inadequate, never requested an increase in the dose, and never requested a change to a different type of medication. Had the medication provided been inadequate, Dr. Flowers opined that Butler likely would have requested a higher dose or different medication. The one time Butler did so, the provider responded. Butler has not submitted any expert medical evidence or opinions rebutting Dr. Flowers' opinion.

In his deposition, Butler claimed that after he submitted his grievance in March 2016, Felita Bain, the SLCJC constituency services officer, told Butler that she had spoken with Carson and that Carson had indicated Butler's dental procedures would be prioritized once dental equipment was repaired and a dental assistant was hired. Butler Dep., 42:23-45:22. Carson has submitted his own affidavit, in which he denies any knowledge of Butler's medical condition or treatment, and further attests that he has no role in personally responding to informal resolution requests or grievances from inmates. Carson Aff., ¶¶ 7, 9-10. Carson has also submitted an affidavit executed by Bain, who attests that she never discussed Butler or any of his complaints with Carson, nor did she tell Butler that she had discussed Butler or his complaints with Carson. Bain Aff., ECF No. 45-3, at ¶¶ 8-9.

## SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. In determining whether summary judgment should be granted, the Court must draw inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the

7

absence of a genuine dispute of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings, but must by affidavit or other evidence set forth specific facts showing that a genuine dispute of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotations and citations omitted). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## DISCUSSION

Butler claims that he had a serious medical need, that he received inadequate treatment for his serious medical need, that Carson had actual knowledge of the serious

medical need, and that Carson was deliberately indifferent to it. He claims that Carson, as superintendent of SLCJC, is liable for inadequate dental staffing, resulting in harm to Butler. In his motion for summary judgment, Carson argues that (1) Butler cannot establish supervisory liability because Carson was not personally involved in or directly responsible for the alleged denial of dental care; (2) Butler cannot establish that Carson knew of and disregarded an excessive risk to Butler's health; and (3) Carson is entitled to qualified immunity because his conduct comported with established law.

"In a § 1983 action, state actors may be entitled to qualified immunity." *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341(1986)) (internal quotations omitted). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The Supreme Court has made clear that a plaintiff cannot defeat an official's claim of qualified immunity "simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). There must be a "particularized" showing that "a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

The right that Butler claims was violated by Carson is his right under the Eighth Amendment to be free from cruel and unusual punishment.[2] In the context of a prisoner's claim of inadequate medical care, the Supreme Court has held that to show an Eighth Amendment violation, a prisoner must demonstrate more than medical negligence; he or she must show that the prison employee's conduct constituted "deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 104. Therefore, the Court will first examine whether Butler established inadequate medical care, then whether Carson was deliberately indifferent to Butler's alleged serious medical needs, and finally whether Carson violated a duty to ensure adequate staffing levels at SLCJC.

## I. Inadequate Medical Care

Whether a prison official deliberately disregarded the needs of an inmate is a fact-intensive inquiry. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Jensen v. Clarke*, 94 F.3d 1191, 1197–98 (8th Cir. 1996). The inmate must clear a substantial evidentiary threshold to show deliberate disregard of the inmate's needs by administering inadequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (holding that "inmates have no constitutional right to receive a particular or requested course of

---

[2] The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees. *City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983). The Eighth Circuit has found little practical difference between deliberate-indifference-to-medical-needs claims brought by pretrial detainees and prisoners, as pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eight Amendment. *McRaven v. Sanders,* 577 F.3d 974, 979–80 (8th Cir. 2009).

treatment, and prison doctors remain free to exercise their independent medical judgment"). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir.1992) (overruled on other grounds).

In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment. *Dulany*, 132 F.3d at 1240. Here, Carson submitted medical records reflecting that after each health services request, Butler was seen by a nurse or Dr. Fuentes, who then prescribed pain medication and antiseptic mouthwash. He was ultimately seen by Dr. Daugherty, who submitted a referral to an outside oral surgeon for the extraction of his teeth. The record also contains affidavits from Dr. Fuentes and Dr. Flowers attesting that the treatment provided by SLCJC staff was adequate, particularly with respect to the pain management provided.

On the other hand, Butler has not produced expert testimony or documentary evidence to support his claim that the treatment provided by SLCJC's medical or dental staff was constitutionally inadequate. *See, e.g. Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (affirming a district court's granting summary judgment in favor of defendants where the prisoner failed to produce expert testimony or documentary evidence to support his claim of inadequate medical treatment, and the defendants adduced affidavits from a dentist and the treating physician that the treatment

11

was adequate). Butler's only evidence of inadequate treatment is his own testimony regarding the adequacy of his dental care and the pain he experienced. However, he did not produce verifying medical evidence that establishes the detrimental effect of the delay. *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (holding that where an inmate submits evidence documenting his diagnosis and treatment, but offers no evidence establishing that any delay in treatment had a detrimental effect on his prognosis, the inmate fails to raise a genuine issue of fact on an essential element of his claim). And, the medical records support Carson's assertion that the medication provided was largely controlling Butler's pain.

While the Court is sympathetic to the fact that Butler experienced discomfort as a result of his dental condition, on this record he has not refuted Defendant's evidence that the treatment he received at SLCJC was adequate from a constitutional perspective. The Court further concludes that in the absence of evidence to support the deprivation of a constitutional right, Carson is entitled to qualified immunity. *See Grayson v. Ross*, 454 F.3d 802, 809 (8th Cir. 2006) (granting qualified immunity because, despite the officers' knowledge that the detainee had used methamphetamines, the detainee did not have an objectively serious medical need).

## II.     Deliberate Indifference to Serious Medical Needs

Although Butler did not establish constitutionally inadequate medical care, the Court will nevertheless address Butler's grounds for asserting § 1983 liability against Carson. To prove deliberate indifference, Butler must show that (1) he suffered from objectively serious medical needs, and (2) Carson actually knew of, but deliberately

disregarded, those needs. *See Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996).

It is well settled that respondeat superior is not a basis for liability under § 1983. *Kulow v. Nix,* 28 F.3d 855, 858 (8th Cir. 1994). Specifically, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (citing *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995)). "Supervisors can, however, incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

Butler argues that Carson is liable under § 1983 because he is the supervisor of the employees at SLCJC, which makes Carson responsible for ensuring that inmates receive medical care.[3] Because general responsibility for supervising the operations of a prison alone is insufficient to establish liability, Butler must adduce some evidence that Carson had actual knowledge of Butler's serious medical condition not being adequately treated and that Carson was deliberately indifferent to it. *See Langford*, 614 F.3d at 460-61.

---

[3] Butler points to the inmate handbook, which sets forth his constitutional guarantee to receive healthcare commensurate with community standards, and asserts that Carson violated that constitutional guarantee.

13

Butler admits that he never communicated directly with Carson about his dental problems. However, he contends that Carson knew about Butler's medical condition because Butler "had people calling Mr. Carson from the streets" and "Carson would always say that he was going to get on top of it." Butler Dep. 38:10-12.[4] Butler also claims that Bain told Butler that she had spoken with Carson about Butler and that Carson said Butler "would be moved to the top of the list once they got the equipment and the assistant for the dentist." Butler Dep., 45:16-18.

Butler also claims that Carson had actual knowledge of his medical condition "through the grievance system" or through the informal resolution request process. Butler Dep., 38:7-80; Am. Compl., at 3. A prison official cannot insulate himself from liability merely by passing an inmate's complaints on to someone else in the prison bureaucracy or by deferring to his role in the official grievance procedure when the official had actual knowledge of the prisoners' complaints. *See, e.g. Langford*, 614 F.3d at 462; *see also McKenna v. Wright*, 386 F.3d 432, 438 (2d Cir. 2004) ("When allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility.").

However, upon review of the record, Butler's claim that Carson was aware of his grievance or informal resolution request is mere speculation. Butler does not provide any

---

[4] Butler later admits that he does not know whether these individuals actually spoke with Carson or whether their messages ever reached Carson. Butler Dep. 44:17-21.

14

evidence to support his allegation that Carson was directly involved in reviewing and responding to grievances or informal resolution requests in general, or Butler's in particular. Furthermore, both Carson and Bain submitted affidavits stating that Carson does not receive or review informal resolution requests or grievances, nor was he made aware of Butler's specific grievance here. *Cf. Langford*, 614 F.3d at 462 (finding deliberate indifference where the supervisory defendant wrote letters to the inmates directing them to use the grievance procedure, thereby demonstrating actual knowledge of the inmates' medical conditions).

Furthermore, even if one assumes Bain's statements do not constitute inadmissible hearsay,[5] the record contains no evidence that Bain, or anyone else, made Carson aware of anything that could be characterized as an objectively serious medical need. This supports Carson's position that he is entitled to qualified immunity, and the Court agrees.

### III. Inadequate staffing

The Court next turns to the issue of whether Carson, by way of his supervisory position with the jail, may be found deliberately indifferent to an inmate's medical needs on the basis of inadequate staffing. A showing of deliberate indifference includes an objective showing that the inmate was deprived of something sufficiently serious (*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)), and a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety (*Wilson*

---

[5] Out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay and may not be used to defeat a motion for summary judgment. *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir. 1986).

*v. Seiter*, 501 U.S. 294, 302-03 (1991)). Inadequate staffing can create an objective risk of substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate indifference test. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013).

In *Cullor v. Baldwin*, 830 F.3d 830 (8th Cir. 2016), the Eighth Circuit considered inadequate staffing as a basis for a § 1983 claim. There, the inmate was unable to obtain dentures from October 2010 until November 2012, despite being placed on the waiting list for dentures. The inmate claimed that the supervisory defendants were deliberately indifferent to his objective medical need by failing to address a shortage of dentists in the prison, thereby subjecting the inmate to needless pain.

On summary judgment, the Eighth Circuit affirmed the district court, which held that the inmate failed the subjective prong, i.e., establishing that the supervisory defendants deliberately disregarded the inmate's need for dentures. The Court acknowledged that the delay in providing the inmate with dentures was caused by a turnover or shortage of dentists in the prison; however, despite the supervisory defendants' actual knowledge regarding the long wait for dentures at the prison, the Court concluded that the shortage of dentists was not created by the supervisory defendants, nor was the shortage intended to cause harm to the inmates. As a result, the supervisory defendants were entitled to qualified immunity. *See also Perez-Gutierrez v. Lampert*, No. CIV. 00-1689-HA, 2002 WL 31689536, at *7 (D. Or. Sept. 30, 2002) ("Any delays in plaintiff's dental treatment during this time were attributable to an unfortunate shortage

of dentists, rather than deliberate delay intended to cause plaintiff "unnecessary and wanton infliction of pain.").

Here, even assuming that the dental staffing levels at SLCJC were inadequate, there is no evidence that Carson was aware of such a shortage, was deliberately indifferent to such shortage, or created the shortage with the intent to cause Butler harm. *Cf. Villarreal v. Cty. of Monterey*, No. 16-CV-06672-LHK, 2017 WL 2311406, at *10 (N.D. Cal. May 26, 2017) (finding deliberate indifference where the defendants were aware of an outside consulting firm's conclusion that the jail was chronically understaffed and hindered the jail's ability to provide adequate medical care to inmates, yet the defendants failed to remedy any of these staffing issues). It is undisputed that Corizon was charged with hiring staff to provide healthcare services for the inmates at SLCJC. After the dentist on staff ended his employment with Corizon, Corizon hired a dentist on a temporary basis until a permanent dentist could be retained and arranged for a medical doctor to identify medical circumstances requiring immediate referral. Butler has provided no evidence that this was in fact inadequate staffing or that Carson would have any reason to know that this temporary staffing would be inadequate.

And, Butler has presented no evidence that Carson was informed or aware of allegedly inadequate dental staffing levels at SLCJC or that he caused the inadequate staffing levels themselves. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003).

Butler's assertions that Carson is liable solely on the basis of inadequate staffing, without showing that Carson actually knew or had reason to know staffing was inadequate, was deliberately indifferent to that shortage, or created that shortage with the intent to cause harm, cannot withstand summary judgment. Furthermore, Carson is entitled to qualified immunity on this point because Butler failed to show that Carson would have understood that his actions or inactions with regard to the staffing levels at SLCJC violated Butler's constitutional right.

## CONCLUSION

In a motion for summary judgment, the burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. The record, which includes affidavits, medical records, and Butler's deposition testimony, reflects such an absence of evidence.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jeffrey Carson's Motion for Summary Judgment [44] is **GRANTED.**

Dated this 10th day of July, 2017.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE